Mr. Gordon, good morning to you. Welcome to the Court. We'd like to proceed as soon as you can be ready. It looks like maybe you are, or nearly. May it please the Court, this case involves a contracting officer's We know the facts, so don't spend any time on that. The point I'm trying to make was that it was an erroneous exercise of discretion. That's based on the premise that she had discretion to accept this proffer of a pledged asset to support the bond of an individual's security. It seems like that's the issue in the case. Did she really have any discretion, or was she forced by the requirements of the applicable FAR provisions to reject the proffered pledge of an asset, namely a pile of coal? I understand, Your Honor, but I think her discretion is broader than that in determining a surety's financial responsibility. But the FAR doesn't just deal with general considerations of financial responsibility. The FAR lists a whole lot of things that are acceptable as pledged assets, and another list that are not acceptable as pledged assets, and the latter list includes personal property. Now, I take it that a pile of coal that's been pulled out of the earth is personal property. Old English terminology, chattel. Not real property, not intellectual property, not anything else. It's personal property. So on the face of it, it's not eligible to be accepted as a pledged asset. Well, Your Honor, I think I would have to disagree. Personal property that's specifically stated to be unacceptable is not open-ended to all personal property. It's defined by examples in the regulation, namely jewelry, furs, antiques. Well, what's the difference between coal and jewelry other than the value per square centimeter? Well, the difference is, Your Honor, is that there is a standard of readily marketable in the regulation, and it doesn't say these are the only acceptable assets. Why doesn't that cut against you? If even a small pile of gold is not acceptable as a pledged asset, even though it's quite easy to sell that quickly, then why would a huge pile of coal be more acceptable? It seems like it would be less acceptable because it can't be quickly sold. Well, Your Honor, I would say a pile of gold or a stockpile of gold is not among the list. They said jewelry, antiques. These are things that don't have defined national value by national indices. They can be sold readily, and that's the readily marketable standard that's in the regulation. I don't know how readily marketable coal is or what proof there is about how readily that it can be sold, but it certainly seems like a far cry from the things on the acceptable list that include things like stocks sold on national exchanges and certificates of deposit and so forth, highly liquid assets of value that you can track by the minute. Your Honor, first of all, the agency did not rely on personal property when they rejected this. They relied on a reg that has about four no-no's in it, and it looked to me like your coal pile fits into all four no-no's. Well, actually, Your Honor, there would be no reason to list all kinds of no-no's if there was only five acceptable assets. They would be stated as acceptable assets. That's not the way the regulation is written. It's written the way responsibility-type regulation should be written, which is to give the contracting officer discretion to determine whether the asset is sufficient to support a bond so that they can then accept the low bid. In addition, Your Honor, even if that asset was determined to be unacceptable by the contracting officer, the regulations further provide that the contractor or the surety can present an acceptable alternative asset. What does the record show about Mr. Scarborough? It's strange. Is he a kind of professional surety, or is he in the coal business, or is he somehow combining coal jobbing, or whatever he does with the coal, and surety-ship? Mr. Scarborough, for purposes of this litigation, is an individual surety. Mr. Scarborough owns coal. I'm asking, what is there about him and the strange combination of surety-ship with coal marketing, or whatever you do with this refuse, in the record? If there's nothing, nothing. Well, basically, the bid bond says he's an individual surety, and it says that he owns coal. Is he a friend of the bidder? No, he's not. He's not a friend of the bidder. He is an individual who supplies bid bonds under a contract. So this is his business? His surety-ship is his business? He is an individual surety, and he has that as his individual business. He has other business interests. But those aren't of concern here. No, they are of concern, in the sense that they concern me, because you would think it odd, a government contracting officer, to be wanting to deal with this fellow. I mean, usually sureties are companies, you know, they're bonding companies of some sort. And the combination of being in the coal business, in some sense, and being a surety is especially odd. I would have thought there'd be something in the record. Well, along the lines of what Chief Judge Michel was saying, you know, his relationship to Tip Top or something. Your Honor, the regulations actually provide for individual sureties, because... He's not anything, except that he's an individual, wanted to be a personal surety, and owns a pile of coal. And that may have been the reason that the contracting officer reacted. However, the contracting officer's reaction was not proper. The first thing, she was under a misapprehension of the regulations, believing that she couldn't have accepted a substitute asset. She said to the contractor, it's not allowed. Well, the FAR specifically allows it. Then she said, I can't accept any support. I can't even entertain any information of the type that you're talking about, after the bid goes in. Again, a misperception of the regulations. She believed it would be untimely. Well, have you made, at any of the stages in these proceedings, have you made an offer of proof about Scarborough's financial salinity, substitute, collateral, the nature of the coal market? Anything that would help us to figure out if a real injustice was done. Well, Your Honor, the way this works is we were rejected, our bid bond was returned. I know, but the question is, was there any opportunity in any of the administrative stages and so on, for you to make an offer of proof about Scarborough and the substitute collateral? Well, the legal issue before the court... I understand what you're saying. We did submit information to the GAO. So, does the record contain that information, so I could satisfy my curiosity about Scarborough? Is that somewhere in this record? Right, it's in the record. What I recall is that the bidder sent a letter to the contracting officer in mid-February, making some statements about certain assets allegedly owned by Mr. Scarborough, including cash. But I don't recall any submission of documents by Scarborough himself, or anything specific about how much cash, deposited where, pledged to the CEO, etc. That conversation was cut off by the contracting officer in two ways. First, they told my contractor that they did not believe substitution... You're not answering the question. I'm agreeing that the contractor provided some general information in a letter, and partly in a phone call. But my recollection is that Scarborough himself provided no documentation that would constitute a pledge of an acceptable asset. Scarborough did not formally present a substitute asset. The contracting officer cut that off. Why was that cut off? I don't understand that. The contracting officer said, in her view, the FAR did not allow for substitution of assets. In her view, any support for this bond would be untimely after the bid was submitted. Now that confuses responsibility, which can be conducted after the bids are submitted, and responsiveness. And she even mentioned it has to be on its face acceptable. Again, this is a misunderstanding by the contracting officer that led to this situation. Now, if you'll notice these... What's your version of what the correct rules are? My understanding is that the FAR requires that the bid documents contain a bond, in case of default, and that the bond be supported by a document, such as a certificate of deposit, that shifts the ownership of some asset of sufficient value, so that if there is default, the government is absolutely guaranteed they're going to get their money. It doesn't just depend on the promise of the individual person serving as the surety. For purposes of responsiveness, the surety has to sign a SF Standard Form 24, which says, I am liable. Then he has to submit an SF 28, which states what the assets are. And then you have to provide documentation, certified documentation, to back up what you're offering to pledge in support of it. I thought that the documentation that you're calling backup documentation had to be the pledge. Well, the pledge... Not refer to it or promise it later, but had to contain it. No, the SF 28 just basically says, what is it? And then you have to submit documentation. The documentation that was submitted by the surety was a separate documentation called Certificate of Pledge of Assets. Under this IFB, the rule then was, if the contracting officer, which matches, by the way, the GAO's rule for 20 years, is if the contracting officer has questions after receiving this documentation, they ask. And if the contractor or surety doesn't provide sufficient support, then they're out. And that's the way it's supposed to work. And as part of this questioning, if the contracting officer feels that I don't feel comfortable with the support I've received, then the contractor or the surety has the ability to offer a substitute of an asset of something that the contracting officer feels comfortable with. And this is how you should protect the government's interest in the low bid, based on the surety. Let me follow up on Judge Posner's question and also let you know what is troubling me about this sequence of events. First of all, as I understand the sequence of events, you have the email of February 20th from Mr. Hollis, I guess it is, and then you have a conversation which Mr. Hollis' version of the conversation appears in his affidavit. That, again, appears to have been a February 20th conversation. I didn't know the exact date. But the sequence appears to be that. And then a letter is sent on the 21st from the McManus Shore firm. Correct. Now, your argument is that Mr. Hollis was told by the CO in the phone conversation no substitution of assets. That's correct. Right. But what troubles me is that then McManus Shore comes back and they don't say, you're wrong about the FAR and here is the substitution we are prepared to offer. Instead, they go back to the CO. And they argue only about why the CO should be accepted. Now, perhaps you're entitled to rest on the contracting officer's telephone rejection, but it seems to me at least risky business to not come back with, as Judge Posner alluded to, a proper or at least an argument as to why the contracting officer's interpretation on the fly, on the phone, of the FAR is wrong and that you are entitled to substitution and here is the substitution. Well, that argument ended up being at the GAO. And what the contracting officer said, if you look at the record of what the contracting officer said, is consistent with what she said on the phone. Everything is untimely after that bid bond comes in. And I can reject it right now. And that's not what the rule is. She said it's untimely. Well, there's no such regulations making it untimely. Yeah, but why isn't that what in a court context we might call harmless error, assuming it's error, because there's no specific substitute pledge on the table. Nothing has been conquered by Scarborough. The error, Your Honor, is that the contracting officer slammed the door shut on that process. Now, the contracting officer has to have some responsibility for that. And what's happened here is neither the GAO nor the court have adopted what the contracting officer said or their reasoning. Instead, what they have added in are judgments of their own based on their view of the exercise of discretion. And under SEC v. Chenery and OMV Medical, the court doesn't have power to accept those other reasons for rejecting a bid bond. Well, do you think Chenery applies to the GAO's review of the COs? Chenery is generally understood to be a limitation on what courts can do in reviewing administrative agencies. But GAO is not a court. Is your argument that the GAO is limited by Chenery, or could the GAO go outside? The GAO is subject to the Administrative Procedures Act, and it's unclear exactly what they're bound by. One thing I would say is the GAO, in this case, first told us the argument that this is personal property, and then after we provided information to them saying, what do you mean personal property? Look at the structure of the regulation. Then we came back with another decision by the GAO that didn't even mention personal property and focused in on this escrow requirement. Now, the escrow requirement itself, again, the government says this is an absolute rule. It's not an absolute rule. My understanding of Chenery is that, literally speaking, it was a formal decision of the Securities Exchange Commission, SEC versus Chenery, and that the Supreme Court rationale essentially was that the SEC is a high-level expert body and that when it renders a decision based on its expertise in a formal proceeding, that courts should not be allowed to uphold the result on a rationale totally different than the actual expert conclusion of this high-level body. To me, it looks like a little bit of a stretch to say that the contracting officer, in the context of this bid, should be considered to be equal to the formal proceeding of the SEC. So I'm not sure Chenery even applies to bar Judge Bush below or this panel in the present appeal. Well, I would disagree, Your Honor, because I think an administrative agency that exercises business judgment is acting like a jury, which is exactly what the analogy was that was used in Chenery to say why the court couldn't come in and say this is a reasonable exercise of your discretion. The administrative agency doing a business judgment and assuring financial responsibility determination is acting as a jury. They assess the facts. They assess whether the substitute asset, for example, is acceptable. They assess, for example, what the regulations say about an escrow account. The contracting officer decides whether the terms and conditions are acceptable, which is, again, a matter of discretion. These are exactly the types of matters that are committed to an agency. But a contracting officer is a very subordinate figure, presumably. She's not an agency. To the government contracting rule, the contracting officer is the authorized voice of the agency. There's no appeal from a contracting officer? There is an appeal. We appeal to the court and we appeal to the GAO. There's no appeal within the agency that is letting the contract? No. Not a formal... I mean, there's always been asked for their superiors. Right. So why not ask her superiors? Why not ask her superiors? You know, she's too abrupt. She cut us off. She didn't allow us to provide the... You could have done that? We were cut off. What do you mean you were cut off? Couldn't you go to her superior and say, she's misinterpreting the regulation, she's being too abrupt, it was just a phone call, and we want to provide this substitute asset? When that contracting officer issues her decision, that is the agency's final decision. We can ask other people, we can do other things, but that is the agency acting. Wait a second. Would you please... Yes. You can speak to her superior? So why don't you do that? They have to return calls. What? I'm telling you the reality. The reality is when you call the contracting officer and you say, can I speak to your superiors, the answer is you can call them. But the bottom line here... But wait a second. So why don't you call them? If you're dealing with a low-level person who has made what you consider to be an obvious mistake of law and is being arbitrary and high-handed, why can't you complain to her superior? Well, I don't think this person is a low-level person. I think this person is the designated, authorized representative of that agency. What is her GS level? I think it depends. It goes probably from 12 to 15. I'm not positive. 12 or 15 is not a high position in government. The way the government sets up the procurement system is they don't want every decision to go to every superior. They authorize people at these levels to make these decisions. Look, if you feel you're losing a major bid, of course they must be constantly going to the superior of a contracting officer. And you also then, when you get caught up... It must be routine. We have so many days after a decision is made... Mr. Gordon, if you're taking... The judge poses questions. If your view was that she made a gross, obvious, black-and-white error in interpreting the FAR, then why isn't your obvious practical recourse to go to the lawyers at the agency and say, this CO, whatever her level is, 14 or whatever it is, misunderstood the law. She's not a lawyer. You guys are lawyers. Give her some help on this. Give her some advice, because it looks to me like the FAR clearly entitles us to do A, B, and C. Why isn't that a readily available avenue? Do they have a general counsel's office in this agency? I believe that the general counsel's office was involved in this. I don't remember every conversation my client had with this agency after this happened, but I think he tried to explore every avenue that he could. And when I was involved in the case, now you only have so many days, and you have to file a protest or you're out. And we did file that protest,  and there was no response. This is the situation we're in. That's not entirely true. Her initial letter rejecting the pledged asset, as I recall, was on the 19th of February. There was a phone call. There was a letter from the law firm. And then she, in effect, rendered a reconsideration decision, same result, different reasoning, broader reasoning, in a letter that was dated the 26th of February. Correct. Now, is it your view that we're not allowed to consider what she said in the latter letter, the later letter? The actual rejection decision is what you're supposed to consider. Well, it looked to me like we could readily construe the letter of the 26th as being the final reconsideration decision, and therefore of the two letters, the better one to look at, whereas it seems like you're saying we're not allowed to look at that at all. Even if you look at that other letter, the decisions still were unreasonable, and none of those were adopted by either the GAO or the Court of Federal Claims because they're invalid. They brought in new interpretations, new interpretations of the regulations, which is what the Court does not have the power to do under SEC v. Chenery. Couldn't they just say no coal? Excuse me, Your Honor? No coal. Wouldn't that be a perfectly acceptable interpretation? No coal? What about no substitute? What about no cash equivalent? We're waiting for the substitute. The substitute was cut off, Your Honor, and the coal itself is not listed as unacceptable. Coal is not. Gold is not listed as unacceptable, even though you're going to hear arguments to the contrary from the government. And the ESPRO account, the physical presence of that commodity, nationally sold, nationally traded, in an ESPRO account is not a mandatory requirement. How do you even know that coal is marketable? Coal is listed every day on an indices and it's bought in huge quantities. Yeah, but we don't know what the pile consists of. We just have a letter saying I've got a pile of coal. I claim it's worth so much money. Without even finding out what it is, the rejection was because it was a mineral. Well, wait, does the CO have to go up there and inspect it? Excuse me? It's work to go, just to go and sniff it or something? I mean, why is it the burden on the surety to document that this property is actually worth the stated amount? It truly is marketable. Its value today on the commodity market is X. Rather than just say I've got a pile of coal, I'm telling you it's good enough, and then the burden, in your view, seems to all shift to the shoulders of the contracting officer. The low bid came in. This is the surety that's providing a bid bond. The way it's set up is that there are two forms. There's supposed to be documentation provided with the form. If the documentation is not sufficient, the contracting officer is to ask questions. And the reason they do that is to preserve the low bid and save the taxpayer dollars based on a surety who's not involved in performance, whose insurance to the government lasts only until the contractor signs the contract. But my question has nothing to do with any of what you're saying. My question is isn't it reasonable in this system of bidding on contracts that there be a burden on the shoulders of the surety to document that the asset he's pledging really is what he says it is and is worth what he says it's worth and is actually marketable in this case where it's a commodity? Because there was some information that this was refuse coal, as Judge Posner noted, not better quality coal, and therefore the marketability might be quite questionable and the price per ton or whatever might also be quite debatable. I believe it was documented. It was documented with a sworn affidavit and it said all the things that you're supposed to swear to in that form. The only thing that was missing was details of an escrow account. And if we get into that, the escrow account requirements again are subject to the discretion of the contracting officer. The contracting officer could have put that coal in a separate area and have an escrow agent in charge of it. They could have asked for a bill of sale for all of that coal to be put in a bank with an escrow agent in charge of it. Those are all possibilities that are allowed to the contracting officer at size and judgment. Why isn't the burden on the surety to provide adequate documentation to support the bond that the surety, individual surety in this case, is offering? Why is the burden, in your description of it, always on, well the contracting officer should ask for more, the contracting officer should complain, the contracting officer should say what's missing. You make it sound like there's no burden at all on the surety. There is a burden. And burden is what is stated that you have to provide in the form. And the surety has to provide that and they have to attest to it. And this surety did that. And his bonds for this coal and other bonds are accepted in this manner in government contracting in numerous circumstances. And the record reflects that. Just one more question just to make sure I understand the scope of your tenory argument. If suppose, per Judge Posner's hypothetical, that I guess it's Mr. Ehlers that wrote the letter on behalf of the law firm, had in fact that a friend of the Secretary of Transportation had called up the Secretary of Transportation and said, you've got a rogue CO down there, can you do something about this? And the Secretary says, I'll get right back to you and checks into it and says, you know what, it's old Wanda Pepper again and she's gotten something wrong here. But of course, she reached a right result but for all the wrong reasons. And the right reasons are, and then the Secretary proceeded to recite all the reasons that were ultimately given by the court in this case. It wouldn't generate a problem there, would there? If the right reasons... Were recited by the Secretary as opposed to the CO. The Secretary is not the one that issues the decision under the way the regulations are set up. So you would say that once Ms. Pfeffer commits herself to a particular position, then that's the end. That gets frozen in amber and the position can't change even within the agency. I think that's the way the law is. Okay. Mr. Gordon, help me, remind me, what's the relief you want here? As I understand, this is a road building contract that's already underway with the other bidder, maybe a third done or half done, something like that, and you applied for various stays and they were denied, as I recall, by GAO and by the Court of Federal Claims. So at this somewhat late date, as a practical matter, what are you asking for? Bid preparation costs or what? I think we have alternatives. First of all, I believe that the work is not far enough along yet that it still wouldn't be to the government's advantage to have us complete the contract earlier and for less money. And then alternatively, we have costs that were sunk into the bid preparation costs and preparation costs and so forth. But I think... Wouldn't they have obligations to the current contractor? Yes, they do. Yes, they do. Because it wasn't their fault, right? The current contractor, no, it wasn't their fault. But what I'm saying is that even in spite of those obligations, you can terminate that contract for convenience if it was not correctly awarded and there are damages that are paid to that contractor. Well, that would have to be subtracted from the others. Right, right, exactly. And I'm saying even with that... You think you would still... I think we'd still be an advantage to the government for us to complete the road. Right, thank you. Ms. Tatum. Tatum, pardon.         was being held under the circumstances that TIPTOP's protest was being held under  and the certified evidence attached cannot be considered documentary evidence of the type that the solicitation discusses. In fact, TIPTOP's reading of the solicitation provision, which is at JA10061, is incorrect. TIPTOP has claimed that the IFB does not state that documentation has to be provided, that instead the contracting officer will contact the bidder if they need more information. That's simply not true. It states that the contracting officer may, after reviewing the affidavit of individual surety, that's the SF-28, and documentary information on the security interest and assets pledged, which are provided with the SF-28 normally, he may request the surety to provide further information or documents. And failure to provide that will be cause for rejection. But it never says you only, the CO must ask for that evidence. It's supposed to be attached in the first place. So the key thing is may? That's your point? Well, may. The word may makes it optimal discretionary? Yes, may request additional information, but also the fact that it states that the CO will already have had this documentary information because the bidder is supposed to, the surety is supposed to provide it. The burden is on the surety to provide it. I'm sorry, were you done with your response? Yes. Thank you. What about this supplemental declaration of Mr. Holland's, the conversation of, I probably will infer February 21, 2008, following the email in which Mr. Holland asserts that he made an offer for a cash to be substituted for the call, and he was cut off by this CO. Now you don't assume the truth of that declaration, and there's nothing, I take it, in the record that contravenes the declaration directly. You don't defend that as a proper response, I take it? The proper response would be to have proffered an actual, some sort of pledge of assets or a description at least of what this asset is going to be. Right, but let me, to make sure when I say a proper, when I'm talking about it for the CO, the A answer by the CO at that point would have been, you have to get the, you can do it, yes, but in order to do it, the surety himself must proffer in a formal way the cash with all the proper demonstration of the actual compliance with the requirement. That would have been the A answer, correct? Correct. And the answer she gave was wrong, correct? No, Your Honor, the... At least according to Mr. Hoppes. Well... But she says there's no possibility of substitution of assets at this point. Well, Your Honor, the, well again, even if that was in error... Well, let me make sure, let's not do the even if thing. Let's first establish whether it was an error in your view, and then we can go to the even if, taking it as error. Again, the declaration is not terribly clear. It was the statement related to the fact that the surety, I mean, the surety was not providing the request, but the FAR does allow a substitution of assets if not a letter made. Okay, here's what Mr. Hollis says. You're familiar with this. Yes. He says that she, Ms. Pfeffer, or Pfeffer, I guess it is, stated that the FARs would not allow for a substitute asset by the individual surety, and that she would not accept it. That's incorrect, I take it. Well, the FAR, yes, the FAR will allow a, yes, yes, the FAR will allow a substitution of assets. Over here, and I see I'm out of time, if I may continue, the proper way to request a substitution is that the individual surety requests the substitution. As stated in FAR 28-203-4, the surety is the one who can manifest willingness to offer a new asset. The president of the bidder cannot make an offer, and in fact, the statement that he, Ms. Pfeffer, is willing to provide cash is not actually what the declaration says. It's not what Mr. Scarborough, the individual surety, has said at any point. He says, I have other assets, including cash. Which portion of the $1.8 million is cash? Could be a very small portion. The asset could be one that is not on the list of acceptable assets. It could, again, be another pile of coal. We don't have any idea, as the Court noted, what this asset would have been, and therefore, the tip-top cannot have been prejudiced. Again, tip-top did not go to any higher level or try to do an agency protest. When you say agency protest, you mean a GAO? No, I mean within the agency itself. What's available? They can ask the agency to reconsider that decision. But there's no formal protest vehicle. Is there for, I mean, once the CO has made a final decision? Well, first of all, that wasn't a final decision. There is an agency protest section within 31 U.S.C. section 3500-something. There is a discussion of how an agency protest can be done. Furthermore, as the GAO noted in the case of Henry Spen, the bidder may provide additional information after an initial determination of non-responsibility. And in that case, the CO considered that information and decided, hey, they really are responsible, and she changed her mind. Just a quick follow-up question on this. We've talked a lot about Chenery. Is it your view that Chenery applies only at the point at which there is court review of agency action, or does Chenery apply at an earlier stage, such as at the point at which the GAO review occurs? I don't believe that Chenery applies at the GAO level. And I believe that the GAO has also noted that it doesn't apply in a bid protest situation because it's not the type of decision which is solely in the agency's, solely delegated to the agency, something like rulemaking or policymaking or fact-finding. Again, this is a, it's not the agency making some policy that then... But you would agree that it would apply when you get to the court? I'm sorry? You would agree that Chenery applies when you get to the court at federal plane? It would if, yes, it would, but not in a situation such as this, where it's simply a question of fact. Isn't that exactly what... I'm sorry, a question of law. A question of law, interpretation of regulations is not something that the court cannot review. It's specifically... But then you have the Chevron issue, right? If the law is unclear, then the agency's interpretation of it may be given a decisive weight by the court. And if the agency hasn't had a chance to decide what the regulation means, then you have a problem. Well, one issue that this court has concluded that the FAR is not the agency's regulation to have deference in applying. But in addition, Chevron itself really would not apply to something like this. It's, again, the fact-finding and larger policy issues. You said that Chenery would apply to policy and some other things. I forget how you articulated it. Mr. Gordon made the argument, on the contrary, that Chenery should apply to any exercise of discretion by an agency official who has, I'll add, some level of expertise, which I'll suggest the contracting officer should be presumed to have. The contracting officer is supposed to know the FAR. They have to apply the FAR every day in every case. So why isn't it a reasonable application of Chenery to say that it applies to the reasoning stated for final decisions by contracting officers because it involves the exercise of expert discretion under the regime of the FAR? Well, in this particular case, we are discussing an interpretation of the regulation. So that doesn't fall within Chenery in any event being a legal question. Well, there's several things we're talking about. That's one of them. The other one is her conclusion that she, for example, had no freedom to do anything further about the potential proffer of a cash substitute, which is certainly not a correct application of the regulation. But as far as Chenery, OMV, I guess, settles the broad question of whether Chenery applies to a court review, right? Correct. But again, that involved a factual issue, not simply a legal issue. Actually, CATL is the GAO case where they've stated that Chevron deference isn't applicable. If we apply Chevron, do you lose? No, Your Honor. I'm sorry. The Chevron, the... No, no, Chenery. If we say Chenery does apply in this case, I'm not saying we will, I don't know what we'll do, but assume that Chenery is ruled to apply in this case, do you necessarily lose in view of the fact that the, as I recall, at least the reasons given in either letter of the CO wouldn't be the reasons that we would rely on to affirm the result? As for the substitution issue, regardless of the statement of reason, there has been no prejudice shown this would be a harmless error in this statement. The contracting officer, her statement really has... Harmless because the regulation is clear? No, well, for substitution, it's harmless because the individual surety never did make that proffer of an asset. There was no... Oh, it is the substitution, yes, sorry. As to substitution, the error was harmless. As to the question of the interpretation of the regulations, Chenery would not apply to that, and therefore, it should not be applied. Were it to be applied, it would make no difference because, well, first of all, the court... So you're really saying that there was no exercise of discretion here. There were some interpretations and some misinterpretations of the FAR, but there was really no exercise of discretion. And therefore, even if Mr. Gordon is right that Chenery can be triggered by an exercise of discretion short of policymaking or rulemaking, it doesn't matter in this case. Well, to begin with the question of the regulatory interpretation of the FAR sections, there even were the court to return to... Well, first, the trial court found that... Made a factual finding that the contracting officer's decision was based on FAR 28203. And she states at the beginning of her February 19th letter that, you know, you are unacceptable under 28203, acceptable assets are these. You know, coal was not one of those. Therefore, the trial court was correct in finding that there was no factual error. You know, so Mr. Gordon appears to be claiming that the last sentence of that paragraph, which describes speculative assets, is the true reason and the only reason. And that, therefore, the trial court made a clear error of fact. Even if that were applied, that looked solely to the... Whether this was a speculative asset. This was a speculative asset. It was risky. There was no way of knowing how much a pile of coal, which we later realized is coal refuse based on the submissions made to the GAO. And it's not even coal. It has to be reprocessed with permits and equipment that the individual surety did not have. And did not have at the time they pledged coal. They weren't going to get the permits or the equipment until July or August, seven to eight months later. So, again, the speculative nature of coal, I think the CO was completely reasonable in finding that. And in that... So then the answer to my question is, even if we apply Chenery, you don't lose. Because we could rely on the explicitly stated reason in the earlier of her two letters. Correct, Your Honor. And also no other letter has provided a reason that was not reasonable. Before you sit down, at least on my own behalf, I'd like to compliment you on being able to cite all these specific sections of the FAR. And also for your exquisitely detailed command of the facts and the communications and so forth. So often we have counsel and, unfortunately, often including counsel of the government, who can't cite specifically to anything in the record or can't cite specific language and can't cite specific subsections of applicable provisions of law. So it's a great treat for us to hear somebody who can cite all that up and down and sideways and shows your great preparation. And I commend you for it. Thank you very much. Thank you, Your Honor. Mr. Gordon, you've got a few minutes for rebuttal. Three, to be precise. Your Honor, the government's position is basically that this was a speculative asset and you could affirm on that ground. Neither the GAO nor the Court of Federal Claims affirmed on that ground. Because it says speculative asset, again, with an example, mineral rights. Coal has everything that mineral rights doesn't have. And that's why none of them did so. The second reason the government gave was that the escrow account... What is coal refuse used for? First of all, when the government made their decision, it was marketable coal. Coal refuse can be used for a lot of different things. It can be used in plants that use coal, I understand, energy plants. But it's often processed to get the highest value out of it. The bottom line here, though, is that the government thought this was marketable coal, just like gold. They said, as a matter of law, it can't be accepted in an escrow account because it can't be physically placed in an escrow account. If you look at the FAR, the FAR gives the contracting officer discretion... She also says it's not on the list in B, and that any personal property not on the list in B is necessarily excluded. Well, B has at least two categories of personal property that are unacceptable. Why have two if all are unacceptable? Why give examples if all are unacceptable? No, no, no. What she said was, unless it is listed in B, if it is personal property, it's automatically excluded. Right, and the whole regulation isn't written that way. The regulation is written with acceptability of assets, not acceptable assets. It has a whole section on unacceptable assets. What's the point? If you only have certain acceptable assets, list them and say that. But instead, they say this includes, this includes, which was the agency's interpretation at the time. They thought that it was not an exclusive list. They just said it was speculative because it was like a mineral right, because it had been sold first. Well, the fact that the February 19th letter mentions speculative asset doesn't necessarily mean that they thought that this was the kind of personal property that is acceptable. That would be another reason that they could have given but didn't give. But I don't know that there's a requirement that a contracting officer list every conceivable, applicable, fatally defective problem with a bid documentation. I agree, but the one that was provided, and in fact, all of them that were provided by the agency were not correct legally. They were not correct. And the reason that they cut off the dialogue on substitute assets wasn't correct. The government admits that. They say it's harmless there. What's harmless about it? If the contractor and the surety have been told, don't bother because we consider it unacceptable. How can that possibly be harmless? It was a harmful error. All right. Thank you both. We'll take the case under advisory. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock. I need four seconds. It's too bad.